UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BASIM SHINA, et al.,

    Plaintiffs,                                    Case No. 20-10080
vs.                                              HON. MARK A. GOLDSMITH

STATE FARM FIRE AND CASUALTY
COMPANY.

    Defendant.
_____/

**OPINION & ORDER
(1) GRANTING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (Dkt. 12)[1] AND (2) DENYING DEFENDANT'S MOTION TO SEVER (Dkt. 9)**

Three sets of Plaintiffs—Basim Shina, Wade and Jill Holton, and Margaret Currie—filed a joint complaint (Dkt. 1) against Defendant State Farm Fire and Casualty Company ("State Farm"), asserting that State Farm unlawfully refused to submit disputed claims to statutorily mandated appraisal. In the complaint, Plaintiffs seek declaratory relief on two grounds. First, they claim that State Farm's Policy Form HW-2122, which is part of each Plaintiff's policy with State Farm, contains provisions contrary to the requirements for fire insurance policies set forth in Mich. Comp. Laws § 580.2833(1)(m). See Compl. ¶¶ 33-39; see also Policy Form HW-2122, Ex. 1 to Pls. Mot. for Summary Judgment (Dkt. 12-2). Second, they seek a declaration that they are entitled to have their disputes with State Farm resolved through the appraisal process mandated by that statute. Compl. ¶¶ 40-41. In addition to seeking declaratory relief, they assert a breach of contract claim. Id. ¶¶ 42-47.

---

[1] Plaintiff's first motion for summary judgment (Dkt. 10) was superseded by the amended motion (Dkt. 12) and is denied as moot.

1

Plaintiffs have filed a motion for summary judgment seeking entry of an order (i) declaring that certain provisions of the appraisal clause in Policy From HW-2122 are void as a matter of law, (ii) declaring that State Farm remains liable to Plaintiffs as if the voided provisions were not contained in the policies, and (iii) ordering Plaintiffs' claims for damages be submitted to appraisal. See Pls. Motion for Summary Judgment at 20-21 (Dkt. 12) ("MSJ").

The motion for summary judgment is granted in part. Recent Sixth Circuit law has settled a crucial dispute between the parties concerning the role courts and appraisers play in insurance disputes such as the ones in the instant case. The position that Plaintiffs asserted has largely prevailed, entitling them to partial summary judgment. However, State Farm may have meritorious arguments under the prevailing framework that it has not yet presented. Therefore, it will have an opportunity to raise those arguments, as described below. Furthermore, while Plaintiffs have shown that they are entitled to statutorily mandated appraisal, the other issue they raise, whether provisions of Policy Form HW-2122 violate Michigan law, is not ripe for review. Therefore, their motion for summary judgment is denied without prejudice in part.

State Farm has filed a motion to sever the claims filed by the three sets of Plaintiffs (Dkt. 9). That motion is denied.

## I. BACKGROUND

This matter arises out of three separate insurance claims. Brief overviews of each dispute follow, drawn primarily from affidavits filed by State Farm's insurance adjusters. Although Plaintiffs have submitted evidence tending to rebut some of the adjusters' conclusions, the Plaintiffs do not, for the most, contest State Farm's presentation of the history of these cases. And because the Court concludes that factual disputes will be decided by appraisal panels and not by the Court, the factual disputes do not warrant much discussion in this opinion.

### A. Basim Shina

On or about May 17, 2019, Shina notified State Farm that a refrigerator at his residence had leaked. Briggs Aff., Ex. A to Mot. to Sever, ¶ 3 (Dkt. 9-2). Shina's public insurance adjuster, Frank Shkreli, submitted a repair estimate of $398,163.07, claiming that the lower level of the property had sustained significant damage. Repair Estimate, Ex. D to Mot. to Sever (Dkt. 9-5). State Farm claims specialist Callie Molitor inspected the property on August 19, 2019, and she "reported that she did not observe evidence that any mitigation had been performed on the lower level of the property." Briggs Aff. ¶ 6. She also denied observing damages to the cabinets around the refrigerator that had reportedly leaked, and she determined that cracks near the bar area of the residence were not related to the May 17, 2019 water damage incident. Id. ¶¶ 7-9. During a second inspection on September 13, 2019, Molitor noted small water stains on the basement floor and advised that State Farm would pay to refinish the basement floor, but not replace it, as Shina's son and Shkreli advocated. Id. ¶¶ 10-12. State Farm disagreed with other aspects of the repairs Shkreli and the Shinas requested, with State Farm either stating the repairs were unnecessary or not caused by accidental direct physical loss associated with the refrigerator leak. Id. ¶¶ 13-15.

On October 1, 2019, Shina said he wished to go to appraisal, but Briggs explained that State Farm would not agree to appraise the loss "due to the coverage questions that remained unresolved." Id. ¶¶ 15-16. The disputes also included Shina's alleged request for payments for items that were not damaged, like parts of the basements floor, and items that State Farm claimed were not damaged by the May 17, 2019 water leak, namely the cracks near the bar. Id. ¶¶ 16-18. State Farm also asserts that Shina denied an inspection once this lawsuit was filed. Id. ¶¶ 22-24. Quality Restoration, a mitigation firm Shina hired, "advised State Farm that it had placed

3

equipment in the basement and drilled some holes for drying out, but did not perform any additional demolition, removal or mitigation." Id. ¶ 25.

### B. Wade and Jill Holton

State Farm hired Mark Honas, an independent insurance adjuster, to respond to Wade and Jill Holton's claim. Honas Aff., Ex. J to MSJ, ¶¶ 2-3 (Dkt. 9-11). He inspected the Holtons' property on August 10, 2018, following damage to their property occurring on July 19, 2019, when a neighbor's tree fell on the roof of their residence. Id. ¶¶ 3, 5. He advised that State Farm would pay to repair the damaged slopes on the roof and to replace the damaged gutters and gutter helmets. Id. ¶ 8. On August 13, 2019, Wade Holton inquired about changing his gutter guards to a more effective style that would match the repairs, id. ¶ 13, but he was told that upgrades would be at his expense, id. ¶ 14. The Holtons wrote to State Farm explaining that the full roof should be replaced based on an estimate from Bulgarian Roofing. Id. ¶ 17. Honas explained that State Farm would not pay to replace the full roof because much of the roof was unharmed, and State Farm would not pay to ensure that the replacement parts matched. Id. ¶ 19. According to Honas, the Holtons were concerned that the value of the house would depreciate if only part of the roof were replaced, but Honas told them that the repairs requested were outside the scope of the policy, and that fixing the damaged slopes would involve a common and proper repair technique. Id. ¶¶ 23-24. In a letter dated November 7, 2019, the Holtons demanded appraisal. Holton Appraisal Demand, Ex. N to Mot. to Sever (Dkt. 9-15). State Farm denied appraisal.

The Holtons contest State Farm's claim that the dispute is about aesthetics or diminution of their homes' value. Green Oak Gutters, a contractor from whom the Holtons submitted a bid, would not warranty its work if it attached the old gutter to the new one. See Holton Email re: Gutters, Ex. 3 to Mot. to Sever Resp. (Dkt. 13-4). Green Gutters provided an estimate to replace

4

just the damaged area for $2,656 with no warranty, or to replace the damaged area and the front facia for $4,612. Likewise, Bulgarian Roofer said that it would not guarantee or warranty repair work on the roof if it only replaced the two damaged section, because that repair would comprise the integrity of all adjacent roofs and ridge shingles. See Holton Email re: Roof, Ex. 4 to Mot. to Sever Resp. (Dkt. 13-5).

### C. Margaret Currie

Kristin Lowrance, a claims specialist at State Farm, investigated damage to Mary Currie's home. Lowrance Aff., Ex. Q to Mot. to Sever, ¶¶ 2-3 (Dkt. 9-18). Mary Currie had been in an acute care facility when water damaged her residence sometime between July 12, 2019 and August 16, 2019, when the damage was discovered. Id. ¶¶ 5-6. Plaintiff Margaret Currie (hereinafter "Currie"), who is Mary Currie's niece and holds a power of attorney from Mary Currie, Compl. ¶ 23, hired a mitigation company and a public insurance adjuster, the latter of whom advised that damages were between $15,000 and $20,000. Id. ¶ 6.[2] However, Lowrance noted that while the water damage to the home appeared to be attributable to a sudden event (a leak near the toilet), she also noticed that mold had developed. Id. ¶ 8.[3] She also determined that moisture in the basement walls from condensation was not attributable to the covered event, based on the location of the leak. Id. ¶ 11. She issued a partial denial for the plumbing repairs and mold. She also spoke with an individual from the company Currie hired to mitigate the harm, who said that he could not run dryers due to the presence of mold. Id. ¶ 13. She also advised Currie's public insurance adjuster of Currie's obligation to mitigate the water damage. Id. ¶ 15. Lowrance denied various portions

---

[2] The adjuster, Jim Thurman, denied having made such an estimate. See Thurman Decl. ¶ A., Ex. 5 to Mot. to Sever Resp. (Dkt. 13-6).

[3] Although not explicitly stated, the implication is that damage from mold would not be covered by the insurance policy.

5

of estimates received from the adjuster and mitigation company because they included repairs to non-affected areas of the residence and because Currie had failed to mitigate. Id. ¶¶ 19, 22. On October 29, 2019, Currie demanded appraisal, id. ¶ 23, which was denied.

## II. STANDARD OF REVIEW

### A. Motion for Summary Judgment

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the movant satisfies its initial burden of demonstrating the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. Scott, 550 U.S. at 380; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Scott, 550 U.S. at 380 (quoting Matsushita, 475 U.S. at 586), as the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," id. (quoting Anderson, 477 U.S. at 247-248) (emphasis in original); see also Babcock & Wilcox Co. v. Cormetech, Inc., 848 F.3d 754, 758 (6th

Cir. 2017) ("A mere scintilla of evidence or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment.").

### B. Motion to Sever

Federal Rule of Civil Procedure 20 provides the following:

Persons may join in one action as plaintiffs if:

> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20.

Motions to sever are evaluated using the following standard:

> Rule 21 of the Federal Rules of Civil Procedure provides that the court may sever any claim against a party. Courts consider a number of factors when determining whether to sever claims, including:
>
>> (1) whether the claims arise out of the same transaction or occurrence;
>>
>> (2) whether the claims present some common questions of law or fact;
>>
>> (3) whether settlement of the claims or judicial economy would be facilitated;
>>
>> (4) whether prejudice would be avoided if severance were granted; and
>>
>> (5) whether different witnesses and documentary proof are required for separate claims.

Parchman v. SLM Corp., 896 F.3d 728, 733 (6th Cir. 2018) (internal marks omitted).

### III.   ANALYSIS

### A. Motion for Summary Judgment

The motion for summary judgment seeks both to compel appraisal and to invalidate portions of the common policy. For the reasons that follow, the motion is granted in part with respect to Plaintiffs' demand to compel appraisal. With respect to the request to invalidate portions

of the Plaintiffs' policies, the Court agrees with State Farm that the issues are not ripe for review. As delineated below, the parties may submit further motions with respect to both of these issues.

**1. The Plaintiffs are entitled to appraisal once all legal disputes are resolved.**

The parties dispute whether the claims should be submitted for appraisal, or whether there are matters the Court must first decide. Auto-Owners Ins. Co. v. Kwaiser, which the parties present as the leading authority on this matter, states the following:

> Matters of an insurance policy's coverage are generally for a court and not for appraisers. . . . We conclude that the issue of coverage is for the court, not the appraisers. The appraisal process cannot legally settle coverage issues . . . . Where the parties cannot agree on coverage, a court is to determine coverage in a declaratory action before an appraisal of the damage to the property.

476 N.W.2d 467, 469-470 (Mich. Ct. App. 1991).

Kwaiser does not clearly define an "issue for coverage." State Farm argues that the appraisers' role is limited to assessing costs associated with replacing items agreed (or determined by judicial proceedings) to be covered. MSJ Resp. at 12 (Dkt. 15).

However, Kwaiser itself casts doubt on this reading when, in its final section, it confronts the question of whether to overturn the decision of the appraisers to award losses associated with items that, according to the insurance company, the insured should have protected from further damages. Id. at 470. It holds that "the decision of the appraisers with regard to what particular articles or items of property are embraced within the general description of the property they are to appraise for damages is final and conclusive." Id. That section can be read as allowing the appraisers to determine numerous factual issues beyond the cost of repair, including whether a particular loss is attributable to a covered or uncovered cause.

Subsequent federal cases have adopted the more expansive view of the appraisal panel's role. For instance, in Smith v. State Farm Fire and Cas. Co, a court within this district found that where an insurer concedes coverage for a loss, "deciding what damages fall into which of the two

defined categories seems appropriately addressed by the appraisers." 737 F. Supp. 2d 702, 710-711 (E.D. Mich. 2010) (citing Olivet College v. Indiana Ins. Co., No. 98–cv–821 (W.D. Mich. 1998) (available at Dkt. 12-13)). In Smith, the parties agreed on how to define the two categories: damage caused by smoke/fire was covered by the insurance policy, and damage caused by contaminants or other sources were not covered. Id.

Other courts within this district have reached similar conclusions. See, e.g., UrbCamCom/WSU I, LLC v. Lexington Ins. Co., No. 12-CV-15686, 2014 WL 1652201, at *4 (E.D. Mich. Apr. 23, 2014) ("For the same reasons, the amount of business interruption losses owing in this case is a 'scope-of-loss' issue as to the amount of damages owing, and is not a coverage issue for the court to decide."); Scottsdale Ins. Co. v. Altman Mgmt. Co., No. 19-11405, 2019 WL 5212215, at *7 (E.D. Mich. Oct. 16, 2019), reconsideration denied, 448 F. Supp. 3d 767 (E.D. Mich. 2020), and aff'd, 832 F. App'x 998 (6th Cir. Jan. 8, 2021) ("The determination of the restoration period is a factual question about damages.").

As indicated above, the Sixth Circuit has very recently decided a case on point. See Scottsdale Ins. Co. v. Altman Mgmt. Co., 832 F. App'x 998 (6th Cir. 2021). Consistent with Smith, UrbCamCom, and the district court opinion in Scottsdale, the Sixth Circuit interpreted Kwaiser to mandate that courts interpret a policy's terms, while appraisers "resolve (at least in the first instance) any factual disputes about the amount of an insured's loss." Id. at 999 (emphasis added).

State Farm argues that Olivet College was wrongly decided, and that Smith is distinguishable. MSJ Resp. at 17. The argument that Olivet College was wrongly decided cannot survive the Sixth Circuit's decision in Scottsdale. The argument for distinguishing Smith, according to State Farm, is that the Smith plaintiff "admitted that it was not seeking coverage for

9

the excluded damages," so the Court could send the case to the appraiser with a clear instruction to award losses caused by fire and not by separate contaminants. See MSJ Resp. at 18.

However, Plaintiffs make a series of similar concessions in their reply brief:

> Plaintiffs Shina and Currie seek only to appraise damage caused by water, and Plaintiffs Holton seek only to appraise damage caused by wind. Defendant's so-called coverage issues are nothing more than factual disputes over the extent of damage from covered causes of loss. Plaintiffs agree with Defendant as to what categories of loss are covered, therefore, there is nothing in the policy that requires legal interpretation.
>
> Plaintiffs agree that the appraisers may only include amounts in their awards for damage caused by or resulting from direct physical loss from water or wind. Plaintiffs also agree that the appraisers may not include any amounts in their awards for damage caused by or consisting of mold. Plaintiffs further agree that the appraisers may not include any amounts in their awards for any additional damage that occurred at or after the time of loss due to the Plaintiffs' failure to timely mitigate their losses.
>
> Defendant inaccurately asserts the Holtons are claiming the entire roof of their home must be replaced so that it "matches" and there is no "diminution in value." This fiction is directly contrary to the Holtons' expressly stated reasons set forth in their emails to State Farm dated August 20, 2019 and September 9, 2019, attached as Ex. 3 and Ex. 4 to Plaintiffs' Response to Defendant's Motion to Sever, which solely raise issues of functional integrity, not aesthetics or diminution in value. (ECF Nos. 13-4 and 13-5). Regardless, the Holtons agree the appraisers may not include in their award any amounts that are solely attributable to aesthetics or diminution in value.

MSJ Reply at 2-3 (Dkt. 17).

Whether these concessions are enough—that is, whether Plaintiffs are correct that "there is nothing in the policy that requires legal interpretation," id. at 2—is not clear from the briefing. State Farm spends much of its response defending its position that courts and juries should resolve factual questions that in fact must be resolved by appraisal. The rest of its response proceeds from the assumption that the Court would accept that argument. Therefore, it has not asked that the Court play its proper role and decide any legal issues.

10

Because the Sixth Circuit had not yet decided Scottsdale at the time that State Farm filed its briefing, State Farm was entitled to make the argument it made.[4] It would be unfairly prejudiced if deprived of the opportunity to present its views on any legal questions that must be resolved before the claim is submitted to appraisal.

Therefore, the parties are ordered to meet and confer within 10 days of the issuance of this Opinion to determine what, if any, legal questions bearing on coverage must be resolved by the Court prior to this case being submitted to the appraisal process. If the parties cannot agree on all such questions, then State Farm must file, within 30 days of the issuance of this Opinion, a motion for summary judgment seeking a ruling on all legal issues it asserts bear on coverage. Plaintiffs must file any response to the motion within 21 days of service of the motion. State Farm may file a reply within 14 days of service of the response. Following resolution of any such summary judgment motion and resolution of any motion regarding allegedly illegal policy provisions (discussed below), the Court will determine the timetable for the parties to proceed to the appraisal process.[5]

**2. Declaring the policy illegal**

Plaintiffs have presented a list of nine provisions in the appraisal clause of State Farm's Policy Form HW-2122 that they claim run contrary to the mandatory provisions of Mich. Comp.

---

[4] Plaintiffs cited one of the Sixth Circuit's previous cases in this area of law, The D Boys, LLC v. Mid-Century Ins. Co., 644 F. App'x. 574, 578 (6th Cir. 2016), but that case was inconclusive on the relevant point, because it dealt with a separate issue: whether a concession of liability for one building in a multi-building complex serves as a concession of liability for another building.

[5] State Farm asserted that it needed to take discovery before it could properly respond to Plaintiffs' motion for summary judgment. Because the Court's role in this dispute is limited to resolving legal questions about the parties' policies—with factual issues consigned to the appraisers—there appears to be no need for discovery. If it were otherwise, the efficiencies that the appraisal process was designed to achieve could well be wiped out as parties pursued costly discovery efforts in court.

Laws § 500.2833(1)(m). See MSJ at 7-13; see also Appraisal Clause Excerpt of Policy Form HW-2122, Ex. 11 to MSJ (Dkt. 12-12). The controversial provisions include, in Plaintiffs' interpretation, multiple waiting periods, at least one written report requirement, a requirement that the parties attempt to agree on their losses, a written notification requirement, limitations on who may serve as an appraiser, a prohibition on the appraisal award being entered as a judgment in court, and a prohibition on demanding appraisal after that party brings a suit or action relating to the amount of loss. See MSJ at 7-13.

State Farm does not respond provision-by-provision to Plaintiffs' argument that portions of the policy are contrary to law. Instead, it argues that the issue is not ripe, because none of its "reasons for refusing to appraise Plaintiffs['] individual claims are based on any of the provisions which Plaintiffs claim are inconsistent with the statute." MSJ Resp. at 21.

The Court agrees with State Farm. "A claim is unripe when it is anchored in future events that may not occur as anticipated, or at all." Jackson v .City of Cleveland, 925 F.3d 793, 807 (6th Cir. 2019) (internal marks omitted). State Farm cited its appraisal clause in denying each Plaintiff's appraisal claim. However, its denials were rooted in its refusal to accept the law articulated in Smith, Olivet College, and other federal cases interpreting Kwaiser, not in any of the controversial provisions. Therefore, it is not clear whether State Farm will attempt to enforce the controversial provisions.

As part of the conference between the parties ordered above, State Farm must inform Plaintiffs of any of the controversial provisions it intends to enforce against Plaintiffs in connection with the appraisal process. If the parties do not reach agreement as to the enforceability of all such provisions, the parties must file, within 20 days of the issuance of this Opinion, a joint memorandum on the docket stating what provisions State Farm insists should be enforceable

notwithstanding Plaintiffs' contention that they are contrary to law. If Plaintiffs wish to seek a ruling from the Court on the enforceability of any such provision, they must file a motion for summary judgment within 30 days of the filing of the issuance of this Opinion. State Farm must file any response within 21 days following the filing of the motion. Plaintiffs may file a reply within 14 days after the filing of the response.

### B. Motion to Sever

State Farm has also filed a motion to sever. For the reasons that follow, State Farm has not shown that the parties are improperly joined. The analysis proceeds along the factors set forth by Parchman.

#### 1. Whether the claims arise out of the same transaction or occurrence

Plaintiffs rely on Allstate Ins. Co. v. Electrolux Home Prod., Inc., No. 1:16CV1946, 2016 WL 6995271, at *2 (N.D. Ohio Nov. 30, 2016). In particular, they offer this passage:

> Under Sixth Circuit precedent, the words "transaction or occurrence" are to be given broad and liberal interpretation in order to avoid a multiplicity of suits. . . . To determine whether claims arise out of the same transaction or occurrence, the Sixth Circuit evaluates whether there is a logical relationship between the claims.

Id. at *2 (internal citations and some marks omitted).

"'The logical relationship test is satisfied if there is substantial evidentiary overlap in the facts giving rise to the cause of action against each defendant.'" GEICO Corp. v. Autoliv, Inc., 345 F. Supp. 3d 799, 813 (E.D. Mich. 2018) (quoting In re EMC Corp., 677 F.3d 1351, 1358 (Fed. Cir. 2012)). "'Stated differently, the plaintiffs' claims must share an aggregate of operative facts.'" Id. (quoting Stojcevski v. Cty. of Macomb, 143 F. Supp. 3d 675, 682-683 (E.D. Mich. 2015)). "The Supreme Court and the Sixth Circuit have permitted plaintiffs to join their claims against a common defendant when the defendant has allegedly engaged in a 'pattern or practice' of discrimination or wrongful conduct." Scott v. Fairbanks Capital Corp., 284 F. Supp. 2d 880, 888

13

(S.D. Ohio 2003) (citing United States v. Miss., 380 U.S. 128, 142 (1965); Crutcher v. Commonwealth of Ky., 961 F.2d 1576 (6th Cir. 1992)).

The Plaintiffs have argued that their cases share the following relevant facts:

> [E]ach plaintiff was insured under State Farm Homeowners Policy Form HW-2122; each plaintiff suffered a loss for which Defendant conceded coverage and made payment; each plaintiff disagreed with Defendant's determination of the amount of loss; each plaintiff demanded statutory appraisal; and, Defendant rejected each demand for appraisal for the same reason, i.e. disputes over the scope (i.e., extent) of damage creates a coverage issue that precludes appraisal.

Motion to Sever Resp. at 13 (Dkt. 15). The similarities in these cases amount to a pattern or practice by Defendants, and the claims are, therefore, logically related. Furthermore, the Plaintiffs are linked by the common policy, and as discussed above, it is entirely possible that the Court may yet need to evaluate whether provisions of the policy violate Michigan law.

State Farm primarily cites two cases to support its motion: Parchman and Monda v. Wal-Mart, Inc., No. 3:19-CV-155, 2019 WL 7020427 (S.D. Ohio Dec. 20, 2019). In Parchman, student loan borrowers' Telephone Consumers Protection Act claims against various student loan servicers were severed where there were "no common questions of fact; the transactions or occurrences at issue regarding the calls [were] not the same nor did they originate from the same caller or company; the severed party would not be prejudiced; and if the case proceeded to trial, different witnesses and documentary proof would be required to prove these claims." Parchman, 896 F.3d at 733. In Monda, employees suing Walmart for gender discrimination failed the transaction or occurrence test despite alleging a pattern or practice of discrimination.

These cases are distinguishable. Parchman's transaction or occurrence determination turned on the fact that the two plaintiffs whose TCPA claims were being severed were contacted by two different companies. 896 F.3d at 734. That issue is not relevant here, where there is only one defendant.

14

Monda turned on the fact that the plaintiffs' claim had "significant differences, including acknowledging that Plaintiffs worked in different Walmart stores, [had] different male comparators, worked in various positions and departments, and worked at different points in time—and for various lengths of time . . . ." Monda, 2019 WL 7020427, at *3. The need to focus in detail on the plaintiffs' individual work histories would have defeated the advantages of a single trial. Id. (citing Brown v. Worthington Steel, Inc., 211 F.R.D. 320, 324-325 (S.D. Ohio 2002)). Here, by contrast, the factual differences are entirely irrelevant, because the appraisers will resolve the factual disputes between the parties. And there is unlikely to be a trial, again because of the respective roles the Court and the appraisers play.

In sum, Plaintiffs have sufficiently shown that their claims arise out of a logically related series of transactions and occurrences.

**2. Whether the claims present some common questions of law or fact**

Plaintiffs' respective claims share in common what may turn out to be the only question the Court will be called upon to answer: whether appraisal is appropriate where the insurer does not deny coverage in total but the parties dispute the extent of the damage attributable to the covered event. More generally, they raise common questions of law about the proper division of labor between courts and appraisers in resolving legal and factual issues. Furthermore, depending on whether State Farm files the motion discussed above, the Court may be presented with additional common legal questions. Finally, the Court may also need to decide whether portions of Policy Form HW-2122 are contrary to Mich. Comp. Laws § 5800.2833(1)(m). Plaintiffs have sufficiently shown a common question of law.

15

### 3. Whether settlement of the claims or judicial economy would be facilitated

Judicial economy has already been served, as the Court has granted summary judgment on an issue common to all three Plaintiffs' claims. Depending on what issues the parties present in upcoming motions, judicial economy may be facilitated further. This factor weighs in favor of denying the motion to sever.

### 4. Whether prejudice would be avoided if severance were granted

Plaintiffs do not address the prejudice factor explicitly. However, in the course of arguing that the Court should exercise supplemental jurisdiction, they argue that it would be inconvenient if the cases were severed, because the Holtons' and Curries' claims would be dismissed for lack of subject matter jurisdiction, and they would be forced to re-file them and litigate them in one or more courts. Mot. to Sever Resp. at 17 (citing Tuttobene v. Assurance Grp., Inc., No. 3:10-0978, 2012 WL 2871848 (M.D. Tenn. July 12, 2012)).[6] As a general matter, the need to re-file cases in state court is not seen as a significant enough prejudice that it warrants federal courts retaining jurisdiction over cases more appropriately heard by state court. For example, in Hankins v. The Gap, Inc., the Sixth Circuit affirmed a district court's decision to dismiss state law claims without prejudice upon awarding summary judgment to the defendants on the federal claims, in part because the plaintiff had failed to identify any "undue amount of wasted or duplicative effort that will result from having to re-file her claims in state court." 84 F.3d 797, 803 (1996). Here,

---

[6] The Court need not address Plaintiffs' argument that the Court should exercise supplemental jurisdiction, because State Farm has conceded that supplemental jurisdiction should be exercised if the cases remain joined. See Mot. to Sever Reply at 6-7 (Dkt. 14); see also Exxon Mobil Corp. v. Allpattah Services, Inc., 545 U.S. 546, 549 (2005) (holding that "where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction").

however, there might well be wasted and duplicative efforts by Plaintiffs' counsel, who would be litigating essentially identical cases in state and federal court. See, e.g., Wilson v. Georgia Boy Mfg., Inc., No. C2-01-1288, 2003 WL 1868719, at *2 (E.D. Ohio March 20, 2003) (denying a motion to sever where severance would create "duplicative litigation and needless expense"). The same commonalities supporting the conclusion that judicial economy would be served by denying the motion to sever support the conclusion that Plaintiffs would be prejudiced by the unnecessary cost of litigating their claims in separate courts.

### 5. Whether different witnesses and documentary proof are required for separate claims

Resolution of these cases will eventually require different witnesses and documentary proofs. However, those witnesses and proofs will be evaluated by the appraisal panels and not by this Court or a jury. Therefore, they will not detract from the efficiencies gained by hearing these cases together.

Considering these factors together, State Farm's motion to sever must be denied.

### IV. CONCLUSION

State Farm's motion to sever (Dkt. 9) is denied. Plaintiffs' motion for summary judgment (Dkt. 12) is granted in part and denied without prejudice in part, as discussed in greater detail above. The parties must engage in a conferral process and file summary judgment motions, if appropriate, on the timetable set forth above. Thereafter, the Court will set the timetable for the parties to proceed to the appraisal process.

SO ORDERED.

Dated: February 4, 2021  s/Mark A. Goldsmith
Detroit, Michigan  MARK A. GOLDSMITH
United States District Judge