UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **BASIM SHINA, ET AL,** | **2:20-CV-10080-TGB-RSW** |
| Plaintiff, | |
| vs. | **ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING PARTIES TO APPRAISE CLAIMS (ECF NO. 19)** |
| **STATE FARM FIRE AND CASUALTY COMPANY,** | |
| Defendant. | |

This case involves a dispute over insurance claims filed by Plaintiffs Basim Shina, Wade and Jill Holton, and Margaret Currie. State Farm, Plaintiffs' insurer, has refused to submit Plaintiffs' claims to a statutorily-created appraisal process, arguing that this Court must resolve outstanding legal questions before the issues can be submitted to appraisal. Before the Court is a motion for summary judgment filed by Defendant State Farm, which seeks a determination that coverage issues remain that must be resolved by the Court. The motion has been fully briefed and the Court heard oral argument on December 14, 2021. For the reasons stated below, the Court concludes that there are no coverage issues that must be resolved, and that Michigan law therefore requires that the matter be submitted to appraisal. Accordingly, Defendant State

Farm's motion for summary judgment will be **DENIED**, and the parties will be **ORDERED** to submit these claims to appraisal.

## I.   Background

### a. Factual Background

Plaintiffs are holders of substantially identical homeowners insurance policies issued by State Farm. After each suffered a covered loss, each requested that their claims be submitted to a statutorily-mandated appraisal process. State Farm refused to appraise the claims, arguing that outstanding coverage questions needed to be resolved first.

### i. Basim Shina

In May, 2019, a refrigerator leaked at Basim Shina's home, causing water damage. Shina's public adjuster submitted a repair estimate which incorporated the cost of repairing "significant damages" to the lower level of the property. Briggs Aff., ECF No. 9-2, PageID.202. A State Farm claim investigator examined the property, and reported finding no evidence that "any mitigation had been performed on the lower level of the property," nor any evidence of damage to cabinets around the refrigerator that had leaked—which Shina had claimed were damaged. *Id.* The investigator further concluded that cracks near the bar area of the home and other cracks in the flooring "on the main level near the pantry," also included in Shina's repair estimate, were unrelated to the water leak. *Id.* at PageID.204. On a second inspection, the investigator found small water stains on the basement floor, and explained that State Farm would

pay to refinish the floor, but not replace it. *Id.* at 203-4. By contrast, Shina's hired adjuster concluded that mitigation had been performed, that the cabinets were damaged, that the cracks in the bar area *were* related to the water damage, and that replacing the basement floor would be a necessary part of the repair. Shkreli Decl., ECF No. 13-2, PageID.765-66. When Mr. Shina requested appraisal on his claim, State Farm told Shina that State Farm would not appraise the loss "due to the coverage questions that remained unresolved, including Mr. Shina seeking payment for items that were either not damaged at all," or "were not damaged by the May 17, 2019 water leak." ECF No. 9-2 at PageID.204.

### ii. Wade and Jill Holton

In July, 2019, a neighbor's tree fell on Wade and Jill Holton's house. Honas Aff., ECF No. 9-11, PageID.314. State Farm's adjuster concluded that the shingles on the "rear and right slopes on the back right corner of the roof" were not repairable, and needed to be replaced. *Id.* State Farm explained to the Holtons that it would repair these sections of the roof only, and would not pay to replace the entire roof and/or the entire gutter system, as the Holtons urged. State Farm's adjuster also concluded that at least some of the Holtons' concerns about a partial roof repair were based on aesthetics—that the repaired section would not match the remainder of the roof—and depreciation of the home's value, both of which are expressly excluded from coverage under the Holtons' policy. *Id.*

at PageID.315. A gutter contractor engaged by the Holtons explained that it would only warranty its work if the entire gutter system along the front fascia of the house were replaced because, if only a limited repair were performed, it would be impossible to seal the old and new gutter sections together properly and the joint between the two would inevitably leak. Gutter Proposal, ECF No. 13-4, PageID.775-77. A roofing contractor also explained that, given the age and shape of the roof and the location of the damaged portions, the roofer would be unable to warranty roof repairs short of a full replacement, because repairs alone would compromise the exiting roof. Roofing Proposal, ECF No. 13-5 779-81. In November, 2019, the Holtons demanded appraisal. Appraisal Demand, ECF No. 9-15, PageID.378-79. State Farm refused to submit the matter to appraisal given the dispute about how much of the roof and gutter system would need to be replaced.

### iii. Margaret Currie

In the summer of 2019, a water leak near a toilet in Mary Currie's home occurred, causing damage.[1] Lowrance Aff., ECF No 9-18, PageID.390. During that time, Mary Currie was in an acute care facility, so it was unclear when the damage, which was discovered on August 16, 2019, occurred, except that it was no earlier than July 12, 2019. *Id*. While

---

[1] The Plaintiff in this matter is Margaret Currie, Mary Currie's niece, who holds Margaret's power of attorney. *See* Compl., ECF No. 1, PageID.10.

inspecting the home, State Farm's adjuster noticed that mold had developed. *Id.* The adjuster determined that damages were limited to the bathroom and an adjoining bedroom, and that "moisture in the basement walls" was unrelated to the water leak. *Id.* at PageID.391. An adjuster hired by Currie disagreed, stating that "the damage caused by the covered water loss is more extensive" than State Farm's adjuster concluded. Thurman Decl., 13-6, PageID.783. State Farm denied certain aspects of the estimates provided by Currie's adjuster and by the remediation firm Currie hired, because those estimates included repairs to areas State Farm determined were not damaged in the water leak, or resulted from Currie's failure to mitigate her damages after the leak. Currie demanded appraisal in October, 2019, which State Farm denied. ECF No. 9-18, PageID.393.

### b. Procedural History

This case was initially before Judge Goldsmith. Judge Goldsmith denied a motion to sever filed by Defendant State Farm and granted Plaintiffs' motion for Summary Judgment in part. Feb. 4, 2021 Opinion and Order, ECF No.18.

In the previous round of motions, Plaintiffs argued that their dispute with State Farm pertained to the scope of damage arising from the various covered incidents, and that appraisers could resolve the issues regarding the scope of damages. They contended that State Farm had conceded coverage for the causes of damage (wind, in the case of the

Holtons, and water in the case of Shina and Currie), and the only remaining issue was whether the specific damages claimed were the result of a covered cause, which was a question about loss that could be answered by the appraisers. ECF No. 17, PageID.908. State Farm, for its part, argued that questions remained about the extent of State Farm's liability and/or the scope of coverage, which are legal questions that must be resolved by a court. *See, e.g.,* ECF No. 15, PageID.832. For example, State Farm argued that the policy only required coverage for those portions of the Holtons' roof that were actually damaged by wind, and that the question of what exactly was damaged was a question that the court had to resolve—essentially arguing that appraisers are limited to resolving disputes about the cash value of items a court or jury has already determined to be covered. Plaintiffs also argued that a number of provisions in the insurance contract were void as against public policy, because they conflicted with the mandatory provisions in the Michigan statute.

Judge Goldsmith concluded that Plaintiffs had the better argument. The Court noted that the leading case on the issue, *Auto-Owners Ins. Co. v. Kwaiser*, 476 N.W.2d 467, (Mich. Ct. App. 1991), could be read in two ways: (1) as State Farm argued, to limit the appraisers' role to assessing costs associated with replacing items agreed or determined in judicial proceedings to be covered; or (2) as Plaintiffs argued, to allow appraisers to determine other factual issues beyond the

cost of repair, "including whether a particular loss is attributable to a covered or uncovered cause." ECF No. 18, PageID.929. The Court noted that federal courts in this district had adopted the more expansive reading of *Kwaiser*, as had a very recent Sixth Circuit case, *Scottsdale Ins. Co. v. Altman Mgmt. Co.*, 832 F. App'x 998 (6th Cir. 2021). On that basis, Judge Goldsmith concluded that the dispute should be submitted to appraisal, but only after all legal questions were resolved—applying a broad reading of *Kwaiser*.

The court noted that the entire brief that State Farm had filed in support of the previous round of motions was premised on the position that appraisers were limited to determining only the cost of agreed-upon items. This was because the *Scottsdale* case—which refutes that argument—was not decided until after briefing closed. Therefore, the Court concluded, State Farm had not had the opportunity to argue whether or not Plaintiffs' concessions were enough to resolve any legal issues. Plaintiffs' concessions were that: the appraisers would be limited to awarding damages "caused by or resulting from direct physical loss from water or wind," and could not include any amounts stemming from mold or falling under the policy's "neglect" exclusion because of failure by Plaintiffs to mitigate their damages (in the case of Shina and Currie) or any amounts attributable to "matching" roof shingles or "diminution in value" in the case of the Holtons. ECF No. 18, PageID.931.

Judge Goldsmith ordered the parties to meet and confer to determine what legal issues, if any, had to be resolved before the matter could be submitted for appraisal and further ordered, if the parties could not agree, that State Farm file a motion for summary judgment seeking a ruling on the legal issues it believes bear on coverage. As to the allegedly impermissible provisions of the contract, Judge Goldsmith noted that those issues were not ripe for review, and required the parties to determine which, if any, of the challenged provisions State Farm expected to apply.

State Farm then filed its summary judgment motion, explaining that the parties could not agree on what legal issues bearing on coverage remained before appraisal, while conceding that it would not attempt to enforce any of the allegedly impermissible contract provisions. On October 4, 2021, the case was transferred to the undersigned. *See* ECF No. 23. Defendant's motion is presently before the Court.

## II.   Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence and any reasonable inferences drawn from the evidence in the

light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. "[A] mere scintilla of evidence in support of the nonmovant's position is not sufficient to create a genuine issue of material fact." *Towner v. Grand Trunk Western R. Co.*, 57 Fed. App'x. 232, 235 (2003) (citing *Anderson*, 477 U.S. at 251-52). Rather, the non-moving party must present sufficient evidence as to each element of the case such that a trier of fact could reasonably find for the plaintiff. *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000).

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### III.  Discussion

Under Michigan statutory law, which the parties agree must be applied, M.C.L. 500.2833(1)(m) requires insurance contracts like those at issue here to provide that "if the insured and insurer fail to agree on the

actual cash value or amount of the loss, either party may make a written demand that the amount of the loss or the actual cash value be set by appraisal." "Where the parties cannot agree on coverage, a court is to determine coverage in a declaratory action before an appraisal of the damage to the property." *Auto-Owners Ins. Co. v. Kwaiser*, 190 Mich. App. 482, 487 (1991). But "once an insurer admits that a loss is covered under its policy, a court is statutorily mandated to order the parties to participate in Michigan's statutory appraisal process[.]" *The D Boys, LLC v. Mid-Century Ins. Co.*, 644 F. App'x 574, 578 (6th Cir. 2016). As noted in the prior Order in this case, *Kwaiser*—the leading Michigan case on this issue—leaves open to interpretation what is a "coverage issue" for the court, and what is an issue of damages, for the appraisers. Are appraisers limited to determining the cash value of repairing or replacing items a court or jury has determined to be covered, or may an appraisal panel address broader factual questions, such as whether particular damage should be properly attributed to a covered cause, or an uncovered cause?

As the prior Order in this case explained, courts in this district have universally adopted a broad view of *Kwaiser*. *See, e.g., Smith v. State Farm Fire and Cas. Co*, 737 F. Supp. 2d 702, 710-711 (E.D. Mich. 2010)(Borman, J.)("Where the insurer has already conceded coverage for the loss . . . deciding what damages fall into which of the two defined categories seems appropriately addressed by the appraisers, with the

help of . . . experts if the appraisers so choose."); *Midtown Inv. Grp. v. Massachusetts Bay Ins. Co*., No. CV 20-10239, 2021 WL 3164274 at \*5 n.4 (E.D. Mich. July 27, 2021)(Goldsmith, J.)("While the appraisers' role is in some sense always limited to valuation, appraisers are sometimes called upon to determine factual questions such as whether a particular loss is attributable to a covered or non-covered event. Although the total value of loss experienced in such cases may or may not be disputed, the appraisers determine the valuation of covered loss by distinguishing between losses attributable to covered and non-covered causes."); *Cox v. State Farm Fire & Cas. Co*., No. 19-12235, 2020 WL 1888824 at \*7-8 (E.D. Mich. Apr. 16, 2020)(Cleland, J.)("Thus, courts make legal determinations as to the categories of coverage; appraisers make factual findings as to whether specific damage fits into those categories or not. Where, as here, the parties do not dispute the categories of coverage, but rather whether an appraiser properly included damages within those categories, the suit is ripe for appraisal . . . Defendant cannot come to court alleging a difference of opinion as to whether certain damages fit within accepted coverage categories."); *UrbCamCom/WSU I, LLC v. Lexington Ins. Co*., No. 12-CV-15686, 2014 WL 1652201 at \*4 (E.D. Mich. Apr. 23, 2014)(Steeh, J.)("For the same reasons, the amount of business interruption losses owing in this case is a 'scope-of-loss' issue as to the amount of damages owing, and is not a coverage issue for the court to decide."). And in *Scottsdale*, the most recent Sixth Circuit case to address

the issue, the court cited *Kwaiser* for the proposition that "in Michigan appraisers resolve (at least in the first instance) *any factual disputes* about the amount of an insured's loss." *Scottsdale Ins. Co. v. Altman Mgmt. Co.*, 832 F. App'x 998, 999 (6th Cir. 2021)(emphasis added). With these considerations in mind, the Court will apply the standards explained above to Plaintiffs' claims.

### a.    Basim Shina

State Farm argues that appraisal is not appropriate for two reasons. First, because some of Shina's claimed losses were not caused by the covered refrigerator leak; and second, because some of the damages may have resulted from Shina's failure to mitigate damages after the covered event, and thus are excluded from coverage by the policy's "neglect" exclusion. *See* ECF No. 19, PageID.959-960. Both arguments can be reduced to the fundamental question of whether or not appraisers may be properly permitted to determine whether damage was caused by a covered or noncovered cause, or by a policy exclusion.

As explained above, Michigan law compels the conclusion that appraisers may permissibly make such a determination of causation. In *Scottsdale*, the Sixth Circuit recently concluded that "in Michigan appraisers resolve (at least in the first instance) any factual disputes about the amount of an insured's loss." *Scottsdale*, 832 F. App'x at 999. Two post-*Scottsdale* decisions of this court confirm a broad interpretation of appraisers' authority to resolve factual questions once all questions of

policy interpretation have been resolved. The recent decision of this court in *Hart v. State Farm Fire & Cas. Co.*, --- F. Supp. 3d. ---, 2021 WL 3709534 (E.D. Mich. Aug. 21, 2021)(Tarnow, J.), confirms a broad reading of *Kaiser*. In *Hart*, State Farm refused to pay more than about a third of what Plaintiffs claimed they were entitled to after a fire damaged their home, and State Farm refused to submit the dispute to appraisal. State Farm argued, in a letter to the plaintiffs, that the parties disagreed about the "scope of repairs," and that a "difference in scope of damages [was] a matter of coverage and not of price." *Id*. at *1. Ultimately, the parties agreed that the insured property had suffered a direct physical loss due to a covered cause, and Plaintiffs conceded that the appraisers could not award damages for any damage not resulting from that covered cause. *Id*. at *7. Judge Tarnow concluded all that remained were factual issues for the appraisers to resolve. *Id*.

In another case, *Laframboise, v. State Farm Fire and Cas. Co.*, No. 1:21-CV-12876, 2022 WL 627147 (E.D. Mich. Mar. 3, 2022), Judge Ludington concluded that no coverage dispute existed where the parties disagreed about whether the insured's "'loss' from [a] tree impact includes his claims for a house rebuild and mold damage." *Id*. at *4. Instead of requiring a legal interpretation of the insurance policy, Judge Ludington explained, answering this question would require "factual assessment of the house." *Id*. Furthermore, in at least one case in this district, a dispute of this sort appears to have been submitted to

appraisal. *See Anika & Assocs., Inc. v. Hartford Cas. Ins. Co.*, No. 11-12534, 2013 WL 1499532, at *5-7 (E.D. Mich. Apr. 10, 2013)(Cohn, J.)("[Defendant insurer] does not deny that the [appraisal panel's] determination of the [loss value] encapsulates (1) the amount of electrical damage; (2) *any issues regarding [insured's] failure to mitigate damages*; and (3) the [actual cash value] loss of the roof and siding")(emphasis added).

The reasoning of *Laframboise*, *Hart*, *Smith*, and *Cox* compels the conclusion that this dispute must also be submitted to appraisal. Just as in *Smith*, The categories of coverage are not in dispute: the parties agree that the water leak is a covered loss. And Plaintiff Shina concedes that damages resulting from some other cause, or from Shina's neglect, are not covered. Pl's. Resp., ECF No. 20, PageID.1090. Determining into which category each element of Shina's claimed damages falls will require factual assessment and inspection of the house, which is a question for appraisers to resolve, not a legal question for the Court. *See Smith*, 737 F. Supp. 2d at 710–11 ("there is no question as to the legal definition of what is covered under the policy, i.e. damage caused by the fire/smoke is covered and damage caused by the contaminants (or other sources) is not covered. . . . deciding what damages fall into which of the two defined categories seems appropriately addressed by the appraisers, with the help of . . . experts if the appraisers so choose."); *Cox*, 2020 WL 1888824, at *7 (collecting cases) ("courts make legal determinations as to

the categories of coverage; appraisers make factual findings as to whether specific damage fits into those categories or not."). To hold otherwise would compel the court to engage in exactly the "crack-by-crack" determination that courts applying Michigan law have urged should be left to appraisers, *see Smith*, 737 F. Supp. 2d at 710 (quoting *Olivet College v. Indiana Ins. Co.*, No. 98–cv–821 at *16 (W.D. Mich. 1998)), and would generate precisely the sort of litigation that the appraisal remedy was intended to avoid.

Consequently, the Court will leave to the appraisers the determination of whether some of Shina's losses were not caused by the covered refrigerator leak and whether some of the damages may have resulted from Shina's failure to mitigate damages after the covered event, thus falling within the policy's "neglect" exclusion.

### b.   Wade and Jill Holton

As a threshold matter, there is no need to address the issues of matching the existing roof or diminution in value, because—while they may have mentioned these issues in past communications with State Farm—the Holtons have repeatedly and unambiguously conceded that they are not entitled to any award for the cost of repairs associated with matching repairs to the original roof or for any diminution in the roof or home's value resulting from the roof damage. Pl's. Resp., ECF No. 20, PageID.1094. Instead, the critical issue is how much of the roof and gutter system must be repaired or replaced—that is, the extent of the

repairs necessary to remediate damages stemming from a cause all parties agree is covered.

Just as in *Hart*, this issue is a question of fact properly addressed by the appraisers. The parties agree that the cause at issue—the 2019 tree accident—is covered, but disagree about the scope of repairs necessary to remediate the damage. As Judge Tarnow explained in *Hart*, assessing the "scope of damages" is a matter for appraisal, not a coverage question that the Court must resolve in the first instance. *Hart*, 2021 WL 3709534, at *7. And indeed, in at least one case, the Michigan Court of Appeals implied that a dispute of this nature was one that could be resolved by appraisers. *Luke v. Home-Owners Ins. Co.*, No. 329433, 2017 WL 239459, at *2 (Mich. Ct. App. Jan. 19, 2017)(appraisal panel did not render a coverage decision where it may have resolved "disagreements between the two sides regarding the extent of damage to plaintiff's residence caused by the accumulation of ice and snow and the repairs needed to fix the damage"). Finally, trying this question to a jury or a court sitting as a finder of fact would eradicate the very efficiencies that the appraisal process is intended to promote. *Kwaiser*, 190 Mich. App. at 486 (describing appraisal as "a simple and inexpensive method for the prompt adjustment and settlement of claims."). Therefore, the Holtons' claim shall be submitted to appraisal, with instructions that the appraisers may only award damages stemming from the covered July 2019 tree accident, and, as dictated by the policy, may not include any

damages associated with matching, diminution in value, or any other aesthetic concerns.

### c.   Margaret Currie

#### i. Damages resulting from mold

Just as the Holtons disclaim any award incorporating the costs of aesthetic matching or diminution in value, Currie concedes that she is not entitled to any costs associated with mold. Pl's. Resp., ECF No. 20, PageID.1090. Where an insured makes such a concession, appraisal is appropriate. *Cox*, 2020 WL 1888824 at *9 ("This is, again, an issue of appraisal, not of coverage. The parties admit and the court agrees that mold and damages caused by mold are not covered by Plaintiff's policy.").

#### ii. Damages resulting from failing to mitigate or disputes regarding the scope of loss

Like Plaintiff Shina and the Holtons, Currie has conceded that she is not entitled to receive any award that incorporates damages arising from a failure to mitigate or damages that did not result from a covered cause. Pl's. Resp., ECF No. 20, PageID.1090, 1092-93. Consequently, any disputes regarding whether certain damages are excluded by the policy's "neglect" exclusion due to failure to mitigate, or whether Currie has claimed coverage for items that were not actually damaged as a result of the covered water leak, are matters for the appraisers to decide. These are not legal questions of policy interpretation that must be resolved by the Court. For these reasons, Plaintiff Currie's claims will be submitted

17

to appraisal, with the instruction that appraisers must not include any award consisting of damages for mold, for items damaged as a result of Currie's failure to mitigate, or for items that were not damaged as a result of the covered water leak.

## IV.   Conclusion

The previous Order entered in this case already ruled that this matter must be appraised once all coverage issues have been resolved. Because there are no coverage issues outstanding that the Court must adjudicate, the issues presented are ripe for appraisal. For the foregoing reasons, Defendant State Farm's motion for summary judgment is **DENIED**. The parties are **DIRECTED** to promptly submit the claims of Basim Shina, Wade and Jill Holton, and Margaret Currie to appraisal.

It is **FURTHER ORDERED** that a panel of appraisers shall, in conformity with M.C.L. 500.2833(1)(m) and the policy at issue, enter an appraisal award for the damage to Basim Shina's home caused by or resulting from the covered water leak that occurred in May, 2019. The appraisers shall not include in the award any damages that the panel determines were not caused by, or did not result from, the covered cause. The appraisers further shall not include any damages that were caused by, or resulted from, the following excluded cause as reflected in the relevant policy:

> We will not pay for, under any part of this policy, any
> loss that would not have occurred in the absence of one

or more of the following excluded events. We will not pay
for such loss regardless of: (a) the cause of the excluded
event; or (b) other causes of the loss; or (c) whether other
causes acted concurrently or in any sequence with the
excluded event to produce the loss; or (d) whether the
event occurs abruptly or gradually, involves isolated or
widespread damage, occurs on or off the residence
premises, arises from natural or external forces, or
occurs as a result of any combination of these:

. . .

Neglect, meaning neglect of the *insured* to use all
reasonable means to save and preserve property at and
after the time of a loss, or when property is endangered.

ECF No. 9-3, PageID.240-241. If the appraisers determine that damages
must be awarded, Defendant State Farm shall receive credit for all
amounts, if any, previously paid to Plaintiff Shina for the damages
outlined in the appraisal award.

It is **FURTHER ORDERED** that a panel of appraisers shall, in
conformity with M.C.L. 500.2833(1)(m) and the relevant policy, enter an
appraisal award for the damage to Wade and Jill Holton's home caused
by or resulting from the tree fall incident that occurred in July, 2019. The
appraisers shall not include in the award any damages that the panel
determines were not caused by, or did not result from, the covered cause,

nor any amount for diminution in value, aesthetics, or costs of "matching" the appearance of new and old roof tiles. If the appraisers determine that damages must be awarded, Defendant State Farm shall receive credit for all amounts, if any, previously paid to Plaintiff Wade Holton and Plaintiff Jill Holton for the damages outlined in the appraisal award.

It is **FURTHER ORDERED** that a panel of appraisers shall, in conformity with M.C.L. 500.2833(1)(m) and the relevant policy, enter an appraisal award for the damage to Mary Currie's home caused by or resulting from the water leak that occurred between June and August 2019. The appraisers shall not include in the award any damages that the panel determines were not caused by, or did not result from, the covered cause. The appraisers further shall not include any damages that were caused by, or resulted from, the following excluded causes as reflected in the relevant policy:

> We will not pay for, under any part of this policy, any loss that would not have occurred in the absence of one or more of the following excluded events. We will not pay for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the residence

premises, arises from natural or external forces, or occurs as a result of any combination of these:

. . .

Neglect, meaning neglect of the *insured* to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

. . .

Fungus,[2] including:

(1) any loss of use or delay in rebuilding, repairing, or replacing covered property, including any associated cost or expense, due to interference at the residence premises or location of the rebuilding, repair, or replacement, by fungus;

(2) any remediation of fungus, including the cost to:

 (a) remove the fungus from covered property or to repair, restore, or replace that property; or

(b) tear out and replace any part of the building structure or other property as needed to gain access to the fungus; or

---

[2] Defined by the policy as "any type or form of fungus including mold, mildew, mycotoxins, spores, scents, or byproducts produced or released by fungi." ECF No. 9-19, PageID.411.

       (3) the cost of any testing or monitoring of air or property

       to confirm the type, absence, presence, or level of fungus,

       whether performed prior to, during, or after removal,

       repair, restoration, or replacement of covered property.

ECF No. 9-19, PageID.426-27. If the appraisers determine that damages must be awarded, Defendant State Farm shall receive credit for all amounts, if any, previously paid to Plaintiff Currie for the damages outlined in the appraisal award.

It is **FURTHER ORDERED** that this matter is **STAYED** and **ADMINISTRATIVELY CLOSED** pending determination of the appraisal proceedings described above. After the appraisal panels render decisions in this matter, the case may be reopened upon petition of either party. The Court retains jurisdiction to consider motions to vacate, set aside, or enforce any appraisal award.

    **IT IS SO ORDERED.**

Dated: March 31, 2022     s/Terrence G. Berg
                        TERRENCE G. BERG
                        UNITED STATES DISTRICT JUDGE